# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **AMBIR LINN MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:14-02274** |
| **v.** | ) | **Judge Trauger / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's "Motion for Judgment [*sic*] on the Administrative Record." Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judment [*sic*] on the Administrative Record" be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") on May 31,

2011, alleging that she had been disabled since August 15, 2006, due to scoliosis, "learning disability," and "emotional problems." *See, e.g.,* Docket No. 13, Attachment ("TR"), pp. 114, 131. Plaintiff's application was denied both initially (TR 61-64) and upon reconsideration (TR 73-74). Plaintiff subsequently requested (TR 75-77) and received (TR 29-58) a hearing. Plaintiff's hearing was conducted on April 23, 2013, by Administrative Law Judge ("ALJ") Michelle Thompson. TR 29. Plaintiff and Vocational Expert ("VE"), Kenneth Anchor, appeared and testified. *Id.*

On May 24, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-24. Specifically, the ALJ made the following findings of fact:

1.  The claimant has not engaged in substantial gainful activity since May 19, 2011, the application date (20 CFR 416.971 et seq.). (Ex. 3D.)

2.  The claimant has the following severe impairments: degenerative disc disease of the thoracic or lumbar spine, lumbosacral spondylosis without myelopathy, morbid obesity, depression, and borderline intellectual functioning (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 416.967(c).

5.  The claimant has no past relevant work (20 CFR 416.965).

6.   The claimant was born on February 22, 1987 and was 24 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10 . The claimant has not been under a disability, as defined in the Social Security Act, since May 19, 2011, the date the application was filed (20 CFR 416.920(g)).

TR 14-23.

On July 23, 2013, Plaintiff timely filed a request for review of the hearing decision.  TR 8.  On September 15, 2014, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a  five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

"listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) failing to encompass all of Plaintiff's limitations in her residual functional capacity determination; (2) improperly according "little weight" to the opinion of Dr. West, Plaintiff's treating physician; (3) making a credibility determination that was unsupported by substantial evidence; and (4) rendering a "step-five analysis" that was unsupported by substantial evidence.  Docket No. 15-1 at 10-18.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1.  Residual Functional Capacity Determination

Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is incomplete because it "excludes nonexertional limitations stemming from Plaintiff's severe impairments of depression and borderline intellectual functioning."  Docket No. 15-1 at 11.  Specifically, Plaintiff contends that although the ALJ: (1) found that her depression and borderline intellectual functioning were severe impairments; (2) stated, "the following residual functional capacity assessment reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental functional analysis"; (3) accorded "some weight" to the opinion of Dr. Blazina, an examining consultative psychologist, and "great weight" to the opinion of Dr. Phay, a non-examining State Agency psychological consultant (both of whom opined that Plaintiff had specific non-exertional mental limitations); and (4) stated that, based on Dr. Phay's opinion, she "has incorporated mental limitations" in her RFC finding, the ALJ in fact failed to articulate or incorporate any mental limitations in her RFC.  *Id.* at 12-13, *referencing* TR 14, 16, 21.  Plaintiff contends that although the ALJ's decision "hints at the presence of non-exertional limitations," the ALJ has failed to clearly articulate the reasoning behind her RFC finding, such that "it is impossible to determine what limitations the RFC is supposed to encompass and whether the RFC is supported by substantial evidence."  *Id.* at 11-12.

Finally, Plaintiff argues that although each of the ALJ's proffered four hypothetical questions contained mental limitations, the degree and type of mental limitations differed, and

they were not the same mental demands as opined by Drs. Blazina and Phay. *Id.* at 13-14, *referencing* TR 53-54, 189-193-197-213. Plaintiff contends that the ALJ's rationale does not explain which mental limitations she included in her RFC finding or how she determined those limitations. *Id.* at 14. Plaintiff seeks remand to clarify which, if any, mental limitations the ALJ included in her RFC. *Id.* at 12.

Defendant acknowledges that the ALJ's RFC finding is "incomplete," and that the ALJ did not explicitly identify the mental limitations she incorporated in her RFC determination, but argues that meaningful review is still possible because the mental limitations included by the ALJ in her RFC determination can be identified by reviewing the remainder of the ALJ's decision and the administrative hearing. Docket No. 16 at 4. Specifically, Defendant notes that, in finding that Plaintiff could perform other work, the ALJ explicitly found that Plaintiff could not perform a full range of medium work *due to non-exertional limitations. Id.* at 5, *citing* TR 23 (emphasis added). Defendant argues that the ALJ properly evaluated the opinion evidence of record and notes that the jobs identified as available by the VE and accepted by the ALJ were given in response to a hypothetical question that incorporated those non-exertional limitations the ALJ found to be credible, including the opinions of Drs. Blazina and Phay: i.e., being able to perform simple instructions; maintain concentration, persistence, and pace for two hours at a time; interact appropriately with others; and adapt to infrequent changes. *Id.* at 5-7. Defendant maintains that because the ALJ properly considered the evidence of record and meaningful review of the mental limitations incorporated by the ALJ into her RFC determination is possible, and because the ALJ's RFC determination is supported by substantial evidence, remanding this case for the ALJ to specifically articulate which mental limitations she included is unnecessary

9

and would not alter her findings. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). When assessing a claimant's RFC, the regulations require consideration of the physical, mental, and sensory requirements of work. 20 C.F.R. § 404.1545(a)(4). With regard to the evaluation of mental abilities in determining a claimant's RFC, the Regulations state:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c).

The ALJ, after evaluating all of the objective medical evidence of record and Plaintiff's reported level of activity, found that Plaintiff retained the RFC to perform "a range of medium work as defined by C.F.R. 404.967(c)." TR 16. With regard to Plaintiff's mental RFC specifically, the ALJ stated:

> The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, *the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.*

TR 15 (emphasis added).

Regarding the "degree of limitation" the ALJ found in her "paragraph B" mental function

analysis, the ALJ explained:

> In this case, the undersigned finds that the claimant's borderline intellectual functioning and depression result in <u>mild</u> restriction in activities of daily living; <u>mild</u> difficulties in maintaining social functioning; <u>moderate</u> difficulties in maintaining concentration, persistence, or pace; and <u>no</u> episodes of decompensation of extended duration.  Therefore, the undersigned finds that the claimant's borderline intellectual functioning and depression do not satisfy the "paragraph B" criteria, as supported by the claimant's subjective complaints and the objective medical evidence discussed below.
>
> In activities of daily living, the claimant has mild restriction.  The claimant reported that she cares for her young children, prepares meals, does household chores, can care for her personal hygiene, and walk to the store.  The undersigned finds that the record as a whole indicates that the claimant has mild limitation in handling her daily activities independently, appropriately, effectively, and on a sustained basis under this criterion.  (Exs. 4E, 4F.)
>
> In social functioning, the claimant has mild difficulties.  The claimant testified that she has some difficulty being around others.  She reported that she has one close friend but minimal contact with neighbors and family.  She reported that she does need someone to accompany her to the store, and she prefers to be alone.  The undersigned finds that the record as a whole indicates that the claimant has mild limitations interacting independently, appropriately, effectively, and on a sustained basis with other people.  (Exs. 4E, 4F, 16F.)
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties.  The claimant reported that she has difficulty with understanding and following instructions and maintaining concentration.  Mental health notes indicate that her recent and remote memory were within normal limits.  The undersigned finds that the record as a whole indicates that the claimant has moderate limitations in sustaining focus, attention, and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings.  (Exs. 4E, 4F, 16F.)

>As for episodes of decompensation, there is no evidence in the
>medical record that the claimant has experienced any episodes of
>decompensation of extended duration.

TR 15-16 (underlining original).

While an ALJ is required to show that she considered the claimant's mental limitations in

reaching her RFC determination, the Regulations do not require an ALJ to provide a list of

specific mental limitations within her RFC finding. *See* 20 C.F.R. § 404.1545(a)(4).

Additionally, an ALJ's RFC finding does not need to correspond to a particular physician's

opinion. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (*citing* SSR 96-5p)

(rejecting the argument that the ALJ is required to base her determination on a physician's

opinion).

Although Plaintiff is correct that the ALJ did not explicitly state Plaintiff's mental

limitations in a concise sentence within her RFC determination, as will be demonstrated herein,

the entirety of the ALJ's decision and the hearing record show that she considered Plaintiff's

mental limitations in determining her RFC. TR 14-23, 50-57. As will be discussed below, in

addition to the evidence quoted above, the ALJ also considered, *inter alia*, Dr. Linda Blazina's

psychological evaluation, Dr. Andrew Phay's psychological evaluation, the opinions of doctors

evaluating findings on reconsideration, the VE's answers to hypothetical questions incorporating

mental limitations, and Plaintiff's Global Assessment of Functioning ("GAF") scores. TR 16-23.

With regard to the hypothetical questions in this case, the ALJ posed four hypothetical

questions to the VE at the hearing. TR 50-55. In her first hypothetical question, the ALJ

incorporated Dr. Phay's opined mental limitations and findings as follows:

>In addition, such person would have the mental limitations outlined
>in Exhibit 7F, where the person has the ability to understand,

12

> remember and carry out simple and detailed tasks, but not multi-
> step or executive level tasks. She can ask simple questions or
> request assistance if needed. She's able to make simple work
> related decisions. She has the ability to maintain attention and
> complete a normal workweek with acceptable performance and
> productivity for the above tasks under normal supervision. She has
> the ability to maintain regular attendance, be punctual within
> customary tolerances, and sustain an ordinary routine without
> special supervision for the above tasks. She has the ability to
> accept instruction and respond appropriately to criticism from
> supervisors. She has the ability to interact appropriately with peer
> supervisors and coworkers. She's able to work with the general
> public. She can set goals, avoid hazards, and adapt to infrequent
> workplace changes.

TR 50-51.

The ALJ's second hypothetical changed the hypothetical claimant's physical restrictions

and incorporated the following mental limitations:

> The person can understand, remember, and carry out simple
> instructions. The person can maintain concentration, persistence,
> and pace for two hours at a time. The person can interact
> appropriately with others and can adapt to infrequent changes.

TR 52-53.

The ALJ's third hypothetical again changed the hypothetical claimant's physical

restrictions, this time to correspond with those contained in definition of medium work (20

C.F.R. 404.967(c)), and kept the following mental limitations:

> The person can understand, remember, and carry out simple
> instructions, can maintain concentration, persistence, and pace for
> two hours at a time. Can interact appropriately with others and can
> adapt to infrequent changes.

TR 53.

The ALJ's fourth hypothetical incorporated the limitations outlined by Dr. West, and did

not contain any additional mental limitations. TR 54-55.

13

In response to hypothetical questions one through three, which contained the mental limitations set forth above, the VE opined that there would be numerous jobs with significant numbers of positions in the local and national economies that those hypothetical claimants would be able to perform.[2] TR 51-54. The ALJ, in her decision, discussed the hypothetical questions she posed to the VE and the VE's answers thereto. TR 23.

In addition to the evidence discussed above, the ALJ also considered the opinions of Drs. Linda Blazina and Andrew Phay:

> Dr. Blazina opined that although the claimant's ability to understand and remember short, simple instructions appeared to be within normal range. [*sic*] However, her ability to understand and remember complex, detailed instructions was felt to be moderately impaired due to her learning problems. Her ability to maintain her concentration and attention appeared to be within normal range. Her social interaction abilities were considered to be moderately impaired due to her depression. Her ability to adapt to change in a work routine and tolerate normal workplace stress were felt to be moderately impaired due to her depression. (Ex. 4F.) The undersigned accords some weight to Dr. Blazina's opinion. She had the opportunity to interview and examine the claimant. However, the undersigned finds that the evidence indicates that the claimant is able to interact appropriately with others. As of October 2012, the claimant denied depression.[3]
>
> . . .

---

[2] In response to the ALJ's first hypothetical question, the VE testified that that hypothetical claimant could perform the jobs of stacker/egg processor, assembler, and table worker. TR 52. In response to the ALJ's second hypothetical question, the VE testified that that hypothetical claimant could perform the jobs of packer, office helper, and wire worker. TR 53. In response to the ALJ's third hypothetical question, the VE testified that that hypothetical claimant could perform the jobs of production helper, laundry worker, and kitchen helper. TR 54.

[3] Accordingly, the ALJ excluded mental limitations caused by depression from her hypothetical questions and from Plaintiff's RFC. *See* TR 23, 50-55.

Andrew Phay, Ph.D., the State agency psychological consultant, opined that the claimant would be able to understand, remember, and carry out simple and detailed tasks, but not multi-step or executive-level tasks. She would be able to make simple work-related decisions, maintain attention and complete a normal workweek with acceptable performance and productivity for the above tasks under normal supervision, maintain regular attendance and be punctual within customary tolerances and sustain an ordinary routine without special supervision for the above tasks. She has the ability to accept instructions and respond appropriately to criticism from supervisors, interact appropriately with peers, supervisors, and coworkers, and work with the public. (Ex. 7F/3.) *Dr Phay's opinion was affirmed at the reconsideration level. (Ex. 12F.) The undersigned accords great weight to Dr. Phay's opinion. His opinion supports a finding of non-disability, and it is consistent with the record as a whole. Based on his opinion, the undersigned has incorporated mental limitations in the residual functional capacity.*

TR 20-21 (footnote and emphasis added).

The ALJ also discussed the GAF scores within the record and noted that she accorded "some weight" to them, but explained that she "must rely on evidence that demonstrates the claimant's overall ability to function." TR 21, 193, 292, 349, 422. The ALJ explained that: (1) GAF scores provide an indication of functioning only at a particular time; (2) GAF scores do not indicate overall functioning; and (3) GAF scores are not intended for forensic purposes. TR 21 (*citing* American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> xxiii, xxvii (4th ed. 1994)). The ALJ additionally noted that the Commissioner does not endorse the GAF scale for use in "Social Security and SSI disability programs." TR 21 (*citing* 65 Fed. Reg. 50746, 50764-65 (2000)).

As has been demonstrated, although the ALJ did not explicitly list particular mental limitations in her RFC finding itself, the ALJ's decision allows for meaningful review and clearly demonstrates that she was aware of Plaintiff's mental limitations and properly considered them.

15

Moreover, as can be seen, the ALJ's RFC findings are supported by substantial evidence. Because the ALJ properly considered Plaintiff's mental limitations and substantial evidence supports the ALJ's RFC determination, remand on this point is not warranted.

## 2.  Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff argues that, in according Dr. West's opinion "little weight," the ALJ failed to comply with the treating physician rule.  *Id.* (*citing* TR 20).  Plaintiff maintains that, when considering the record as a whole, the ALJ's determination that Dr. West's opinion is not supported by his own treatment notes is "not a good reason for refusing to assess more weight to the only treating physician of record." *Id.* at 15.  Plaintiff argues that Dr. West was "extensively involved" in Plaintiff's back treatment and "continually assessed back issues," and that Dr. West's opinion is consistent with, and supported by, other substantial evidence, including "objective medical findings."  *Id.* (*citing* TR 219-22, 228-29).  Specifically, Plaintiff maintains that: (1) Dr. West noted "tenderness in Plaintiff's spine and continuously assessed back issues"; (2) Dr. West referred Plaintiff to a specialist and knew about the specialist's "observations, assessments, and treatments"; (3) "imaging of Plaintiff's back revealed levoscoliosis"; (4) "imaging of Plaintiff's spine showed mild disc space narrowing at the lumbosacral junction"; and (5) a "CT of Plaintiff's spine showed bilateral sacroiliac disease and protrusion of the disc at L4-5 level." *Id.* (*citing* TR 187, 230, 231, 271-73).  Plaintiff concludes, therefore, that Dr. West's opinion is "supported by treatment notes and findings related to Plaintiff's back issues." *Id.*

Plaintiff also argues that Dr. West's opinion is consistent with the opinion of Dr. Johnson, the only other examining physician.  *Id.*  Plaintiff maintains that the opinions of Drs. West and Johnson are consistent because "Dr. Johnson opined that Plaintiff could occasionally

lift 15-20 pounds, stand/walk for 2 hours and sit for 6 hours in an 8-hour workday, and her work activities should not exceed any restrictions placed on her by her treating physician." *Id.* Plaintiff notes that the ALJ likewise accorded "little weight'" to Dr. Johnson's opinion. *Id.* at 16 (*citing* TR 20). Plaintiff argues that the "RFC finding of medium" is questionable because the ALJ "rejected every opinion concerning Plaintiff's physical limitations." *Id.* (*citing Hill v. Califano*, 454 F. Supp. 74, 77 (E.D. Tenn. 1977)).

Plaintiff maintains that the ALJ's failure to give Dr. West's opinion more weight is harmful because Dr. West's opinion justifies a more restrictive RFC finding. *Id.* Plaintiff argues that the ALJ failed to provide a good reason for not giving Dr. West's opinion more weight and "substituted her own layperson opinion" for the opinion of a treating physician. *Id.* Plaintiff contends that the ALJ's finding that Plaintiff could perform the duties of medium work is not supported by substantial evidence and that the case should be remanded "for the proper evaluation of the only treating physician opinion of record." *Id.*

Defendant responds that the ALJ considered Dr. West's treating relationship with Plaintiff and properly accorded his opinion "little weight" because that opinion is inconsistent with the treatment records. Docket No. 16 at 9. Regarding Dr. West's treating relationship, Defendant notes that, at the time he rendered the opinion at issue, Dr. West had seen Plaintiff on only one occasion in the prior year. *Id.* (*citing* TR 228, 464, 466). With regard to the inconsistent nature of Dr. West's opinion, Defendant argues that Dr. West's opinion is inconsistent with the record for several reasons: (1) "Dr. West suggested Plaintiff could only lift 10 pounds occasionally and 5 pounds frequently," but "the medical records show that Plaintiff retained full strength"; (2) "Contrary to Dr. West's opinion that Plaintiff had limitation in walking, she had a normal gait"; (3) Plaintiff's "concentration remained normal" even though

"Dr. West opined that Plaintiff's pain 'constantly' interfered with her attention and concentration"; (4) Dr. West's treatment notes show "virtually no abnormal objective findings"; and (5) Dr. West's opinion that lumbar x-rays and CT scans showed "mild" abnormalities is inconsistent with the state agency medical consultant's opinion that the same evidence demonstrated that "Plaintiff did not have a severe impairment." *Id.* at 9-10 (*citing* TR 187-88, 195, 217, 219, 221, 224, 226, 228, 230-31, 236, 240, 248, 251, 256, 259, 262, 265-66, 290, 338, 340, 344, 348, 375-76, 381-82, 385, 394, 402, 448, 453, 464, 466-67).

Addressing Plaintiff's argument that "it was unclear how the ALJ determined that Plaintiff could perform medium work because she gave little weight to the medical opinions," Defendant responds that "the RFC does not need to correspond to a physician's opinion because the Commissioner has the final authority to make determinations or decisions on disability" and "[t]here is no requirement that the ALJ tie the RFC finding to any particular doctor's opinion." *Id.* at 10 (*citing Rudd*, 531 F. App'x at 728). Defendant argues that since the medical evidence "shows that Plaintiff retained a normal gait, full strength, and intact sensation" and "the state agency medical consultants' opin[ed] that Plaintiff did not have a severe physical impairment," there is support for the ALJ's finding that Plaintiff could perform "a range of medium work." *Id.* (*citing* TR 180, 182, 188, 195, 217, 219, 221, 224, 226, 228, 236, 249, 251, 256-57, 259, 265, 375-76, 378-79, 381-82, 385, 394, 451-53, 464).

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

18

(1)  Examining relationship.  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship.  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
. . .

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a

specific amount of weight.[4]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561

_____

[4] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of

F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, she is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

As noted, a treating physician's opinion is accorded greater weight than other opinions when that opinion is supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with the evidence of record. In the instant action, the ALJ found that Dr. West's opinion contradicted other evidence in the record and was therefore entitled to "little weight." TR 20. Specifically, the ALJ discussed Dr. West's treatment records and

---

20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

Medical Source Statement ("MSS") opinion and the weight accorded thereto as follows:

> . . . In June, she presented to her primary care physician, Willard West, M.D., reporting back pain. (Ex. 3F.) Radiographs showed probable degenerative mild disc space narrowing at the lumbosacral junction but were otherwise unremarkable. (Ex. 10F/15.) An August computed tomography (CT) scan showed bilateral sacroiliac disease and a disc protrusion at L4-L5 on the left narrowing the neural foramina by about 50 percent. (Ex. 10F/14.) Dr. West assessed the claimant with degeneration of the thoracic or lumbar intervertebral disc and other and unspecified disorders of the back. He prescribed narcotic pain medication, anti-inflammatories, a muscle relaxant, and trigger point injections. He recommended that the claimant lose weight, walk two miles a day for exercise, and avoid heavy lifting, bending, twisting, and sudden unexpected movements. (Ex. 10F/5-6.)

> . . .

> . . . The claimant returned to Dr. West claiming she was discharged from the pain management because she had missed her last appointment. Dr. West administered a urine drug screen and prescribed narcotic pain medication. (Ex. 20F.)

> . . .

> . . . Dr. West opined that the claimant would be able to lift ten pounds occasionally, 20 pounds frequently, stand or walk for 15 minutes at a time or one hour in an eight-hour workday, and sit for one hour at a time or four hours in an eight-hour workday. He further opined that she frequently is able to do fine and gross manipulation bilaterally, occasionally is able to operate a motor vehicle, but never is able to bend, stoop, balance, reach overhead bilaterally, or work around dangerous equipment. She must avoid constant exposure to dust, smoke, or fumes. She occasionally needs to elevate her legs throughout the day. Dr. West concluded that the claimant would miss four or more days of work a month due to her impairments. (Ex. 21.) The undersigned accords little weight to Dr. West's opinion. Although he is a treating physician, his opinion is not supported by his own treatment notes, which show no findings related to the claimant's spine.

TR 18-19, 20 (*referencing* TR 188, 217-32, 464-65, 466-67).

When evaluating the other physical opinion evidence of record, the ALJ also discussed

21

the opinion of Dr. Roy Johnson and the weight accorded thereto:

> In August 2011, the claimant underwent a consultative examination with Roy Johnson, M.D. She reported that her back pain is exacerbated when she bends over and picks up her children. Physical exam showed that the claimant was 66 inches tall and weighed 273 pounds. She had tenderness to palpation at the L4-L5 paraspinal areas, but she had full range of motion in the spine, negative straight leg raises bilaterally in seated and supine positions, and normal gait and station. (Ex. 5F.)
>
> . . .
>
> Dr. Johnson opined that the claimant would be able to left [*sic*] up to 20 pounds occasionally, walk for two hours, and sit for six hours in an eight-hour workday with normal breaks. (Ex. 5F.) The undersigned accords little weight to Dr. Johnson's opinion as it is not supported by his exam report, which showed some tenderness in the lumbar spine but full range of motion and normal gait and station.

TR 19, 20 (*referencing* TR 195-96).

The ALJ additionally discussed the opinion of State agency physician, Dr. Kirby VonKessler, and the weight accorded thereto:

> Kirby VonKessler, M.D., State agency medical consultant, opined that the claimant's scoliosis was non-severe. (Ex. 8F.) His opinion was affirmed at the reconsideration level. (Ex. 13F.) The undersigned accords little weight to the State agency medical consultants' opinions. Evidence provided at the hearing level, including a CT of the lumbar spine, support a finding that the claimant's back impairments are severe impairments as they cause limitations or restrictions that have more than a minimal effect on the claimant's ability to perform basic work-related activities. The undersigned finds that the claimant's back impairments in combination with morbid obesity limit her to a range of medium work.

TR 21 (*referencing* TR 215, 240).

The ALJ further discussed Plaintiff's treatment at the "Pain and Spine Consultants" clinic, in part as follows:

. . . Physical exam showed some tenderness to palpation, some limitation in the lumbar range of motion, but no gross deformity or scoliosis, normal gait, normal lower extremity strength, normal reflexes, intact sensation, and negative straight leg raising bilaterally. Subsequent exams yielded similar results. (Ex. 15F.) . . . Physical exam results were within normal limits other than tenderness, some limit to lumbar range of motion, and groin pain with left hip rotation. Notes indicate that range of motion of the lumbar spine was limited due to body habitus. . . . (Ex. 18F/1-3.)

TR 19 (*referencing* TR 233-38, 247-82, 374-421).

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2).

As can be seen in the ALJ's discussion quoted above, Dr. West's MSS opinion contradicted his own treatment notes, as well as other evidence of record. Because Dr. West's MSS opinion contradicted not only his own treatment notes, but other treatment records and opinions as well, the Regulations do not mandate that the ALJ accord Dr. West's evaluation controlling weight. Accordingly, Plaintiff's argument on this point fails.

### 3. Credibility Determination

Plaintiff contends that the ALJ's determination that she was not entirely credible was not supported by substantial evidence. Docket No. 15-1 at 16 (*citing* TR 21). In particular, Plaintiff maintains that the ALJ failed to consider the side effects of her medications and failed to consider her "alterative treating methods" as required by 20 C.F.R. § 416.929(c)(iv)(v). *Id.* at 17.

23

Specifically, Plaintiff contends the ALJ did not consider that she "underwent a number of injections both in her back and left knee," and did not consider her testimony that "she gets drowsy when taking hydrocodone." *Id.* (*citing* TR 39-40, 254-55, 393-95). Plaintiff argues that "the volume and variety of treatments" she received supports her allegations of pain. *Id.* Plaintiff therefore asserts that this case should be remanded for "proper evaluation of her credibility." *Id.*

Defendant responds that "the ALJ properly evaluated Plaintiff's credibility and found her allegations of disability not credible." Docket No. 16 at 13. Defendant maintains that the ALJ properly considered and weighed the treatments Plaintiff received for her impairments. *Id.* at 10-11. Defendant points out that Plaintiff "reported significant improvement with pain medication" and saw improvement after receiving knee and back injections, and that her "mental impairments also improved with treatment." *Id.* at 11 (*citing* TR 18-19, 37, 248, 256, 259, 265, 307, 347,381, 385, 394, 431, 434, 437, 447). Defendant notes that "despite Plaintiff's improvement, she did not take the medication as prescribed" and she missed several appointments. *Id.* (*citing* TR 255, 259,319, 375, 385). Defendant asserts that the ALJ properly considered Plaintiff's improvement with treatment and noncompliance with prescribed treatment when assessing her subjective complaints and reaching a credibility determination. *Id.* at 11 (*citing* TR 14, 18-19, 22).

Defendant also argues that, contrary to Plaintiff's assertion, the ALJ specifically discussed Plaintiff's injections. *Id.* (*citing* TR 18-19). Defendant further contends that "Plaintiff never told her doctors that her medication caused drowsiness and [she], in fact, denied having any side effects." *Id.* at 12 (*citing* TR 14, 22).

Defendant additionally maintains that the ALJ properly found that the objective medical evidence was inconsistent with Plaintiff's allegations. *Id. (citing* TR 14, 18-19, 21-22).

Specifically, Defendant contends that during physical examinations, Plaintiff exhibited normal gait, full strength, and no neurological deficits. *Id. (citing* TR 180, 182, 188, 195, 217, 219, 221, 224, 226, 228, 236, 249, 251, 256-57, 259, 265, 375-76, 378-79, 381-82, 385). Defendant also contends that, despite her complaints of pain, Plaintiff appeared in no acute distress and actually "remained alert, oriented, and cooperative with normal speech, logical though processes, and intact memory and concentration." *Id. (citing* TR 180, 188, 195, 217, 219, 221, 224, 226, 228, 236, 259, 265, 340, 344, 347-48, 375, 378, 381, 448, 453, 464). Defendant asserts that the objective evidence did not support her subjective complaints, such that the ALJ could properly find them to be less than fully credible. *Id.*

Finally, Defendant argues that the ALJ properly considered Plaintiff's daily activities and found them to be "inconsistent with her allegations." *Id.* at 13 (*citing* TR 18, 21). Defendant maintains that Plaintiff's "ability to care for young children, maintain her personal care, prepare meals, wash dishes, do laundry, vacuum, shop, watch television, draw, and read" is inconsistent with her subjective allegations. *Id.* Defendant contends that because the ALJ considered the medical opinions of record, Plaintiff's medical treatment, the medical evidence, and Plaintiff's daily activities, the ALJ could properly discount Plaintiff's credibility and find that she could perform a range of medium work. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep.

No. 466, 98th Cong., 2d Sess. 24) (emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929

("[S]tatements about your pain or other symptoms will not alone establish that you are

disabled...."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon

alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's

allegations...if the subjective allegations, the ALJ's personal observations, and the objective

medical evidence contradict each other.").  Moreover, "allegations of pain...do not constitute a

disability unless the pain is of such a debilitating degree that it prevents an individual from

engaging in substantial gainful activity."  *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d

1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

(*construing* 20 C.F.R. § 404.1529(c)(2)).  After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms

are not credible.  *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997);

*Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y*

*of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ discussed Plaintiff's subjective complaints, reported daily

activities, aggravating and relieving factors, testimony, medication, reported side effects, and

treatment received in pertinent part as follows:

> The medical record includes a history of knee pain. (Exs. 15F, 18F.) . . . There is no indication in the record that the claimant required anything more than conservative treatment for this impairment. . . .

> . . .

> . . . The claimant reported that she cares for her young children, prepares meals, does household chores, can care for her personal hygiene, and walk to the store. . . .

> . . . The claimant testified that she has some difficulty being around others. She reported that she has one close friend but minimal contact with neighbors and family. She reported that she does need someone to accompany her to the store, and she prefers to be alone. . . .

> . . . The claimant reported that she has difficulty with understanding and following instructions and maintaining concentration. . . .

> . . .

The claimant has alleged disability due to back problems, emotional problems, and being a slow learner. (Ex. 2E/2.) She testified that she experiences pain in her low back that radiates to her feet. She has to elevate her ankles because they swell to the point where she cannot wear shoes. In order to alleviate the symptoms of her impairments, the claimant asserted that she has taken hydrocodone and steroid injections, and she reported weight gain as [a] side effect of such medication. In terms of her mental impairments, the claimant testified that she graduated high school but was in special education classes due to a learning disability. She testified that she could not fill out a job application and would not remember what she reads in the newspaper. The claimant further testified that she has trouble concentrating, finishing what she starts, and has some difficulty being around others.

Regarding her functional limitations, the claimant alleged that her impairments have negatively affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and follow instructions. (Ex. 4E/6.) The claimant testified that she can lift ten pounds, stand or walk for one hour, and sit four hours in an eight-hour workday. When asked about her activities of daily living, the claimant

testified that she lives with her husband and two daughters ages two and five, and her husband is on disability due to an ankle impairment.  Her five year old weighs 40 pounds, but the claimant testified that she is not supposed to lift her.  She testified that she gets her children dressed, prepares breakfast for them, and reads them stories.  The claimant reported that she has no problem with personal care, does light household chores with breaks, and shops. (Ex. 4E.) . . .

. . .

In February 2012, the claimant presented at the mental health clinic reporting that she was there because she was trying to get her disability, and she had some depression.  She further reported low energy, low motivation, sad mood, anxiety, crying spells, racing thoughts, and feelings of worthlessness and helplessness. . . . She was treated with an anti-depressant, which she reported had decreased her crying spells.  (Ex. 16F/1-10, 25.)  She underwent counseling, and her GAF score in July had improved to 50.  (Ex. 16F/67.)  In October, it was noted that the claimant was doing well. She described a pretty good mood and denied anger outbursts, depression, and mood swings, although she noted some anxiety and irritability when arguing with her boyfriend. . . .

In terms of her back impairments, the record reflects that the claimant presented to the emergency department in May 2011, reporting low back pain and left flank pain following a motor vehicle accident in March 2011. . . . She was treated with Lortab. (Ex. 2F.) In June, she presented to her primary care physician, Williard West, M.D., reporting back pain.  (Ex. 3F.) . . . Dr. West assessed the claimant with degeneration of the thoracic or lumbar intervertebral disc and other and [*sic*] unspecified disorders of the back. He prescribed narcotic pain medication, anti-inflammatories, a muscle relaxant, and trigger point injections. . . .

In August 2011, the claimant underwent a consultative examination with Roy Johnson, M.D. She reported that her back pain is exacerbated when she bends over and picks up her children. . . .

In November, she presented to a pain clinic reporting constant, severe pain ranging from an eight to ten out of ten.  She reported that bending backward, prolonged standing, prolonged walking, and climbing stairs aggravated the pain, but indicated that it was relieved by pain medications, which helped her a lot. . . . (Ex. 15F.) In December, the claimant underwent lumbar facet joint injections.

(Ex. 11F/1.) In January, she reported that her pain was five out of ten without medications and zero out of ten with medications. She was referred to physical therapy and counseled about getting into a weight loss program . . . . (Ex. 15F/19-25.)  Subsequent treatment notes indicate that the claimant's weight was discussed at every visit. Despite being advised to do a lot of exercise, stretching, and dieting and to lose weight as it can cause back pain, her weight continued to increase. She was referred to Physical therapy for back strengthening several times but did not follow through. (Ex. 15F.)  In August 2012, it was noted the plaintiff still had back pain but was stable with the current regimen.  (Ex. 15F/2.) In January 2013, pain management notes indicate that the claimant had missed several appointments claiming she had transportation issues and had to get a ride from a friend for that appointment.  However, she was noted to have left the appointment alone. . . . It was further noted that the claimant's urine drug screenings all came back negative for Lortab use, and the physician indicated concern that she was diverting her medication and questioned whether she even needed it.  She reported that her last Lortab was taken over a month before. . . . (Ex. 18F/1-3.)

TR 14, 15, 17-19 (*citing* TR 130-36, 145-52, 189-94, 221-22, 233-38, 247-82, 283-358, 374-421, 422-63).

Also in finding that Plaintiff's subjective complaints were less than fully credible, the ALJ noted, *inter alia*, that "the clamant did not lose weight as advised on numerous occasions, she missed several appointments, and her urine drug screen showed that she had not been taking her narcotic pain medication"; and that Plaintiff's activities of daily living were not as limited as one would expect, given her subjective complaints, because she took care of her children, did household chores, had no problem with personal care, and could shop when someone would go with her.  TR 21-22.

With further regard to Plaintiff's treatment and reported medication side effects, Plaintiff's representative engaged in the following exchange with her at the hearing:

Q:      What do you have to do to get relief or to recover from these problems that you have, when you get home?

A:      I sit down, try to just relax for a few minutes . . .

Q:      Okay.  Medical records show that you've been doing some pain management at the Pain Spine Consultants.  It looks like they've given you some injections, some narcotic medication.  Does that help?

A:      Sometimes.  Most of the time it does.

Q:      Okay, all right.  And is this in your knee and your back that they're helping you out with?

A:      Yes.

                              . . .

Q:      Okay.  All right.  Have any side effects from any of the medication?

A:      Just drowsiness.

Q:      Okay.  And which medication is that that you have the side effects from?

A:      The hydrocodone.
                              . . .

Q:      Okay, are you able to sleep through the night?

A:      Most of the time I am.

Q:      Okay, all right.  Besides the narcotic pain medication you're on and the injections that you've had, any other kinds of therapies for pain relief that you've been through?

A:      I've been to physical therapy . . .

                              . . .

Q:      Okay.  And how did that work out for you?

A:      I was going there only because Pain Spine sent me there and it helped a little bit . . .

                              . . .

A:    . . . I was on the steroid shots and it made me gain a lot of weight.

. . .

Q:    . . . What bodily position do you spend most of your day in?

A:    Mostly laying down.

Q:    Okay. Does that give you the best pain relief?

A:    Yes.

TR 37, 39-42, 44.

As can be seen, the ALJ was aware of, and considered, Plaintiff's treatment measures and reported medication side effects. The ALJ's decision specifically addresses in detail not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. TR 14-22. Plaintiff's contention that the ALJ "failed to consider alternative treatment besides medications" (including injections), and failed to consider the impact of her reported medication side effects fail, because, as can be seen above, the ALJ explicitly and repeatedly mentioned them. *Id.*

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily

activities, and other evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F.2d at 975.

After assessing all the objective medical evidence, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of theses symptoms are not entirely credible for the reasons explained."  TR 21. The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision. The ALJ's decision demonstrates that she was aware of and properly considered the side effects of Plaintiff's medications and Plaintiff's alterative treatments in making her determination. Therefore, this claim fails.

**4.  Step Five Analysis**

Plaintiff argues that the ALJ's step five determination that there existed a significant number of jobs in the local and national economies that Plaintiff could perform was flawed because the VE's testimony upon which the ALJ based her determination was rendered in response to an "incomplete hypothetical question."  Docket No. 15-1, at 17.  Specifically, Plaintiff maintains that the hypothetical question was incomplete "due to the ALJ's errors in evaluating Plaintiff's RFC and credibility."  *Id.*

Plaintiff additionally argues, "because the RFC was not clearly articulated in the decision, it is unclear what limitations the ALJ found Plaintiff to have, and therefore it is uncertain which

hypothetical the ALJ was relying on in finding there were jobs that exist in the national economy" that Plaintiff could perform.  *Id.*

As discussed above, Defendant argues that the ALJ's RFC and credibility determinations were proper.  In response to the instant statement of error specifically, Defendant argues that the ALJ's hypothetical question properly incorporated the impairments and restrictions she deemed credible, such that the ALJ could appropriately rely upon the VE's testimony regarding the existence of a significant number of jobs in the local and national economies that would be appropriate for Plaintiff to perform given the restrictions found by the ALJ.  Docket No. 16, at 13-14.  Defendant therefore argues that the ALJ's reliance on that answer properly satisfied the Commissioner's burden at step five.  *Id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity.  20 C.F.R. §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).  The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations.  *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).  In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle."  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983).  In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence

of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)).

As discussed in the statements of error above, the ALJ's RFC and credibility analyses were proper. Plaintiff's argument that the ALJ's hypothetical question was "incomplete" "due to the ALJ's errors in evaluating Plaintiff's RFC and credibility" therefore fails.

Because the ALJ's hypothetical questions were proper, the ALJ could rely upon the VE's answers to those hypothetical questions as substantial evidence of the existence of a significant number of jobs that Plaintiff could perform. Accordingly, Plaintiff cannot sustain this claim.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge